ALBERT E. PLANT vs. THE CONNECTICUT COMPANY.

Third Judicial District, New Haven, June Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

In an action to recover damages for personal injuries caused by the defendant's street-car in running into the rear of the plaintiff's wagon, the parties were at issue as to the plaintiff's course and distance from the railway track, the plaintiff, who was more or less deaf, claiming that he had maintained the same relative position

Plant *v.* Connecticut Co.

for several hundred feet and had no knowledge that a car was approaching from behind until it hit his wagon; while the defendant insisted that when its motorman first saw the plaintiff he was four or five hundred feet away and driving at a safe distance from the track, and that he continued in such position until just before the collision, when, in spite of the warnings given, he suddenly turned in front of the car and it became impossible to avoid the collision. *Held* that the questions thus raised were for the determination of the jury, and that the trial court properly refused to direct a verdict for the defendant.

A motorman, who runs his street-car at a reasonable speed and gives the customary signals to clear the track to a driver ahead who is within normal hearing distance, has the right to assume, until the contrary appears or should have appeared to him, that his signals have been heard and that upon his approach the driver of the team will turn off the track to a place of safety. And an instruction to this effect ought not to be refused where the vital question for the jury to pass upon is whether the motorman, after he knew or should have known of the driver's peril, did all he could, in the exercise of ordinary care, to prevent the injury.

Argued June 4th—decided July 25th, 1913.

ACTION to recover damages for injuries to the person and property of the plaintiff, alleged to have been caused by the defendant's negligence, brought to the Superior Court in New Haven County and tried to the jury before *Gager, J.;* verdict and judgment for the plaintiff for $2,000, and appeal by the defendant. *Error and new trial ordered.*

*Thomas M. Steele,* for the appellant (defendant).

*Charles S. Hamilton,* for the appellee (plaintiff).

THAYER, J. The plaintiff claims that the evidence showed that on the day that he received the injuries complained of he was in his farm wagon, driving westerly along a public highway in which the defendant had a double-track railway, upon which it operated cars by electricity; that the off wheels of his wagon were

in the space between the east-bound and west-bound tracks, near to the southerly rail of the latter, and the near wheels between the rails of the east-bound track; that just before placing himself in this position he had seen a west-bound passenger car pass, and had then looked eastward along the track to see if other west-bound cars were approaching, and that none were in sight; that he drove westward, after entering upon the tracks, at a slow trot, and maintained the same position relative to the tracks, with no knowledge that a car was approaching, to a point about three hundred and ten feet from the point where he entered upon the tracks; that his rear off wheel was then struck by a work-car of the defendant which was proceeding westerly over the west-bound track, causing the injuries complained of.

That there was a collision was undisputed. The defendant claimed that when the work-car, rounding a corner, came in sight of the plaintiff at a point four or five hundred feet away, he was at once seen by the motorman; that he was then driving at a safe distance, four or five feet, from the south rail of the west-bound track; that the car at this time was going at a safe rate of speed, but was at once slowed down, and the gong sounded as the car approached the plaintiff's wagon; that the plaintiff continued to drive in a safe position, four or five feet from the south rail of the west-bound track, until just before the collision, when he turned suddenly to the right in front of the car when it was so near that it was impossible for the motorman to avoid striking the wagon, and the collision occurred.

It was a conceded fact upon the trial that the plaintiff's hearing was impaired prior to the collision, his counsel admitting that he was somewhat deaf, and the defendant claiming that the evidence showed that he was very deaf. There was undisputed evidence that

the motorman had no knowledge that the plaintiff was deaf. There was no positive evidence tending to show that the plaintiff did, or that he did not, know of the approach of the car before it struck him. There was no positive evidence that he did, or did not, look back after entering upon the tracks to see whether a car was approaching. The plaintiff was in court, but did not testify.

That the collision occurred established infallibly the fact that the plaintiff's wagon was at that time in such proximity to the south rail of the west-bound track that the car could not pass it without striking it as it did. From the manner in which it was struck it must then have been only a few inches beyond the line of safety, for the step of the car, as testified, struck the off wheel of the wagon. A few inches to the left would have been a place of safety. The parties disagreed as to the time when the wagon got within the danger line; the plaintiff claiming that it had held practically the same position with reference to the south rail of the west-bound track from the time the plaintiff drove upon the tracks three hundred and ten feet east of the place of collision. The defendant claimed that from the time that the motorman saw the plaintiff upon the tracks, one hundred and fifty to two hundred feet easterly of the point of collision to a point thirty or less feet from that point, the plaintiff's course had been continuously in a line four or five feet south of the west-bound track. The parties apparently agreed that the plaintiff's course was parallel with the rails of the track, and differed only as to the distance from the track. It was a matter for the jury to determine which, if either, was right, and, if neither was, to determine the course and distance from the track at which the plaintiff drove. They had to aid them in this the wheel's position at the point at which the collision occurred, and the manner in which the car

struck it, and the other circumstances. If, as claimed, the car struck the wheel squarely in the rear, it would not indicate that the wagon at the time was then, or immediately before had been, making a short turn to the north. If from the evidence the jury found that the plaintiff, for one hundred and fifty feet, had been driving so near the track that a car could not pass without striking it, there was a question for the jury, whether such negligence was a proximate cause of his injury, and this would depend, as the jury were told in the charge, upon whether the motorman, after he knew of the plaintiff's position and peril, exercised reasonable care to prevent the collision, as well as the plaintiff's conduct as the car approached. These were all proper questions for the determination of the jury, and the court properly refused to direct a verdict for the defendant.

The jury, having returned a verdict for the plaintiff, must (in view of the instructions) have found that the motorman did not use reasonable care to avoid the collision after he knew of the plaintiff's peril. The court, therefore, could not properly set the verdict aside.

The case was clearly a close one upon the facts. The defendant claimed that its motorman did all that his duty required him to do, by slowing down, ringing the gong as a signal of his approach, and, after the plaintiff turned in front of the car, doing everything possible to avert the injury. If we assume that the jury found that the plaintiff made no change in his course, it was still a nice question to determine when the motorman, in the exercise of ordinary care, knew that the plaintiff was oblivious to his peril. Clearly he was not bound to any such knowledge when, not knowing that the plaintiff was deaf, he saw him, four or five hundred feet away, driving outside of the west-bound track, with nothing to prevent his turning to the left, out of danger, which

manifestly might have been done without crossing the rails of the east-bound track. He might, for a certain time at least after sounding the gong, believe that the plaintiff would do what it was the duty of a prudent man in his situation to do for his own safety, and what it was his duty to the defendant to do under the law, namely, turn away from the track and give the defend- ant an opportunity to pass. Under these circumstances, the court was asked by the defendant to charge the jury as follows: "If you find that the motorman saw the team ahead of him upon or close to the track upon which his car was proceeding, and find further that his car was moving at a reasonable speed for the time and place, and that he gave warnings which would have been heard by a normal person in the plaintiff's position using ordinary care, he had a right to assume, until the contrary appeared or should have appeared to him, that his signals would be heard and that upon his ap- proach the plaintiff would drive off of the track to a place of safety." This was a correct statement of the law, as held by this court in several cases. *Morrissey* v. *Bridgeport Traction Co.*, 68 Conn. 215, 218, 35 Atl. 1126; *Riley* v. *Consolidated Ry. Co.*, 82 Conn. 105, 109, 72 Atl. 562; *Andrews* v. *New York & N. E. R. Co.*, 60 Conn. 293, 299, 22 Atl. 566. Under the circumstances of the case, the defendant was entitled to the instruc- tion requested, especially as, under the instructions given, the vital question for the jury to determine was whether, after the motorman knew or ought to have known of the plaintiff's peril, he did all that he could do, in the exercise of ordinary care, to prevent the in- jury, and this involved a finding as to the point of time when the motorman was chargeable with such knowl- edge.

Several other requests of the defendant, which were denied by the court, were correct in themselves, but the

charge as given avoided the necessity for giving them. They related to the plaintiff's duty to inform himself of the approach of the car, and to his conduct subsequent to his entering upon the tracks. The charge of the court assumed that he was negligent, or at least that there was no evidence that he was not, either upon the defendant's or the plaintiff's claims as to his proximity to the west-bound track, and the question of his negligence was thus practically withdrawn from the jury's consideration. If, upon another trial, the evidence should warrant the submission to the jury of the question whether the plaintiff's conduct, after he entered upon the tracks, in failing to heed the signals, or to look for a car behind him, was negligence, these requests may become pertinent.

There is error and a new trial is ordered.

In this opinion the other judges concurred.