ARTHUR H. BALDWIN vs. THE CITY OF NORWALK.

Third Judicial District, New Haven, January Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

The statutory requirement (General Statutes, § 1535d), that the
headlights of a motor-vehicle in motion shall throw sufficient
light to show any substantial object in the roadway directly ahead
for at least one hundred and fifty feet, does not necessarily charge
the driver of the automobile with the duty of seeing such objects
clearly under any and all possible conditions, or render him respon-
sible for negligence if he fails to see them. For it is common
knowledge that such objects often partake of the composition
and color of their surroundings, and are visible in greatly varying
degrees when artificial light is thrown upon them.

In the present case the plaintiff, a practicing physician, on a winter
night, drove against a frozen pile of mud and sand about eighteen
inches high on Main Street in the defendant city, as a result of
which his automobile was deflected to the curb where it over-
turned upon and severely injured him. Held that it was a question
for the jury to determine upon the conflicting evidence, whether
the plaintiff had at the time of the accident the lights required
by statute, and whether a failure to have them was a proximate
cause of his injury; also whether, if he had the lights, he was in
the exercise of due care in not seeing and avoiding the obstruction.

The defendant contended that the pile was a mass of snow and ice;
and the trial court correctly told the jury that if they so found,
the plaintiff could not recover because he had not given the ten-
day notice required in case of injuries arising from highway defects
caused by snow or ice.

It appeared upon the trial that the defendant's appropriation of

(1)

$1,000 for the removal of ice and snow from its streets had been reduced to $180 at the time of the accident. *Held* that in view of this situation the court committed no error in referring in its charge to that statutory provision (§ 58) which permitted municipal officers to exceed the appropriations for the necessary repair of roads.

The defendant's superintendent of streets testified that the pile would not in his judgment impede travel, and that were it there to-day (the day he testified) he would not remove it. It appeared that the pile was in fact removed the day after the accident upon the superintendent's order. *Held* that the jury were entitled to consider the fact of removal the next day as affecting the credibility and fairness of the witness, and therefore the court committed no error in so instructing them.

Two interrogatories were presented to the jury as to the composition of the obstruction; was it ice and snow, or was it mud and sand; and the jury were told that if they found in favor of the defendant they should answer the first question "Yes" and the second "No," and vice versa. *Held* that the jury could not have understood that they were to do anything else than answer the questions as they found the fact respecting the composition of the pile.

The correct practice is to require interrogatories submitted to the jury to be answered directly. Whether interrogatories shall be submitted or not, is within the reasonable discretion of the trial judge, as the proper administration of justice may require.

Prior to his injury the plaintiff had been receiving a net income of about $2,000 from the practice of his profession. *Held* that in view of his diminished practice ($500 per year) and the severity of his injury, a verdict for $16,000 would not be set aside as excessive.

Argued January 18th—decided February 21st, 1921.

ACTION to recover damages for injuries to the person and to the automobile of the plaintiff, alleged to have been caused by the negligence of the defendant, brought to the Superior Court in Fairfield County and tried to the jury before *Keeler, J.;* verdict and judgment for the plaintiff for $16,000, and appeal by the defendant. *No error.*

About eight thirty o'clock on the evening of February 20th, 1918, the plaintiff sustained injuries to his person and to his automobile by the overturning of his automobile on Main Street, a public highway in the city of Norwalk.

The plaintiff claimed to have proved: That on or about February 1st, 1918, there had been removed from a catch basin located between the trolley tracks on Main Street a large quantity of refuse, mainly mud and sand, which was held together by the freezing of the moisture in the pile. The pile was located between the curb and the trolley tracks and about five and one half feet from the easterly trolley rail, and was about twenty inches in diameter at the base and from eighteen to twenty inches in height. The face of the pile nearest the middle of the street was nearly perpendicular, and the mass was hard and compact. The distance from the curb to the easterly rail was 11.05 feet. The plaintiff, at the time in question, was driving northerly on Main Street, at about fifteen miles per hour, to attend a patient, and with his left-hand wheels near the easterly rail of the trolley tracks. The vicinity was not otherwise lighted than by two small incandescent lamps of the city, one located one hundred feet north of the pile and one seventy feet south of the pile. The plaintiff was driving a Ford automobile, the lights upon it were lighted, and as the automobile passed the pile of debris the hub cap of the right front wheel struck against the west face of the pile. The impact threw the plaintiff's feet from the pedals which operate the brakes, the front wheels were thereby turned sharply to the right, and the automobile suddenly swung to the right, struck the curb, and overturned upon the plaintiff, severely injuring him and the automobile. The plaintiff, as he drove up Main Street, was attending to the driving of his automobile and was keeping a reasonable lookout upon the road ahead of him; but, by reason of the dark color of the mass of debris and the lights and shadows, he did not see the pile of debris, nor had he any prior knowledge of its existence. The plaintiff was throughout free from any negligence

contributing to cause the overturning of his automobile and his injuries.

The defendant claimed to have proved: That the winter of 1917–1918 had been exceptionally cold and severe, and it was very cold for four or five days preceding the accident. On February 20th, 1918, the snow and ice had not been removed from the side of Main Street except for a distance of at least five hundred feet southerly of the point where the accident was claimed to have occurred, and extended from the curb for a distance of five feet. This accumulation was about six to twelve inches thick on the inside and tapered to the outer edge. The same condition continued for a long distance north and on the opposite side of the street. At the point where the accident was claimed to have occurred, there was an accumulation of snow and ice extending from a point eight inches from the curb to a point five feet three inches from the curb. The distance from the outer edge of this accumulation to the easterly rail was six feet two inches. This pile was from eighteen inches to two feet high throughout, except that the face toward the traveled portion of road was at a steep angle. The accumulation was ninety-five per cent snow and ice, and it kept its form because of the frozen liquid of which it was for the most part composed. It was a clear moonlight night, the moon becoming full on February 25th, and two electric street lights were located in the neighborhood, one at a distance of thirty-five feet and another at a distance of 125.7 feet from the accumulation. Main Street was well paved with brick and thirty-nine feet wide from curb to curb. There were no trees on either side of the highway for one hundred and fifty feet in either direction from the accumulation. The plaintiff was proceeding at an excessive speed northerly along the street, without chains upon any wheel. At

the time of the accident, 8:30 p. m., the pavement was covered with a thin skin of ice, and the plaintiff's automobile proceeded a short distance, then swerved and struck the curb sixty feet from the accummulation, when it overturned. For a distance of between four hundred and five hundred feet from the south of the accumulation there was an unobstructed view. No complaint had been made to the city authorities of this accumulation. Although other ice and snow removal work had not been completed in more widely traveled parts of the city, the appropriation for snow and ice removal on February 1st, of the year in question, was reduced to $180.06, out of a total appropriation of $1,000. The defendant was not negligent as alleged, and the plaintiff was guilty of contributory negligence.

*William B. Boardman* and *Edward J. Quinlan,* for the appellant (defendant).

*William H. Comley, Jr.,* for the appellee (plaintiff).

CURTIS, J. The defendant's first claim of error is the denial by the trial court of its motion to set aside the verdict as against the evidence. The main ground upon which this claim is based is that the plaintiff was guilty of contributory negligence because, the defendant claims, the evidence establishes that the conditions of light on the night in question were either sufficient to enable the plaintiff to observe a substantial object on the highway, or else his own lights were insufficient.

The motor-vehicle law makes the following provision regarding lights (General Statutes, § 1535 (d) ):

"Wherever there is not sufficient light within the limits of the traveled portion of the highway to make all vehicles, persons or substantial objects clearly

visible within a distance of at least one hundred and fifty feet, the forward lights which a motor vehicle is required to display shall, when the vehicle is in motion, throw sufficient light ahead to show any person, vehicle or substantial object upon the roadway straight ahead of the motor vehicle for a distance of at least one hundred and fifty feet."

The defendant claims that under this statute an automobile driver who, in the night time, collides with a substantial object on a straight highway, in the absence of any intervening vehicles or objects which obscure or prevent a view ahead, should be presumed either to have seen the object or to have failed to see the object because he did not have the forward lights required by statute, and that he was therefore guilty of contributory negligence.

The defendant claims that under the evidence Main Street was a straight highway, and the frozen accumulation of mud and debris which the plaintiff claimed to have proved to exist upon the highway on the night in question was a substantial object straight ahead of the plaintiff as he drove northerly on Main Street, and that under the evidence there were no intervening vehicles or other objects to prevent or obscure the plaintiff's view ahead, and therefore the plaintiff failed to see a substantial object straight ahead of him made clearly visible by his lights, or he did not have lights of the illuminating power required by statute and hence failed to see the object, and was in either case guilty of contributory negligence and barred a recovery.

We do not construe the statute so as to create this dilemma. The statute must be construed in the light of common knowledge. It is common knowledge that substantial objects because of their composition or coloring, and the coloring of the surface or object upon which they rest, are visible in greatly varying degrees

when artificial light is thrown upon them. They are not necessarily clearly visible.

The plaintiff claimed that he was keeping a reasonable lookout upon the road ahead of him, but, by reason of the dark color of the mass of debris and the lights and shadows, he did not see the pile of debris of which he had no prior knowledge. It was a question for the jury to determine whether the plaintiff had at the time the lights required by statute, and whether a failure to have such lights was a proximate cause of the accident, and whether, if he had such lights, he was in the exercise of due care in failing to see and avoid the pile of debris under the surrounding circumstances on the night in question.

As to this claim and the other claims of the defendant under this reason of appeal, we are satisfied that under the conflicting evidence the jury could have reasonably found the issues for the plaintiff.

The charge of the court objected to in the first reason of appeal was proper and adequate. Under the evidence the jury could have found that the plaintiff's automobile collided with a pile of mud and debris, made compact and hard by the freezing of the moisture in it, or that it collided with a mass of snow and ice; in the latter event, the jury were correctly told that the plaintiff could not recover because of his failure to give the ten-day notice required in case of injury arising from a highway defect caused by snow or ice.

The reference in the charge to the provision of General Statutes, § 58, to the effect that executive officers of municipalities may exceed the appropriations for the necessary repair of roads, without penalty, was not improper in the connection in which it was made.

Evidence had been introduced as to the appropriation for snow removal made by the city, and the jury, by suggestion of counsel or upon their own motion,

were liable to think the duty of the city to keep its streets in a reasonably safe condition for travel was affected by the appropriation made.

The charge as to the duty of the city in regard to snow and ice removal became immaterial when the jury found that the obstruction was not composed of snow and ice, as they must have done under the charge.

The court charged as follows: "Mr. Minor, the superintendent of streets of the defendant, described this pile as 95% snow and ice covered on the top with muck and street sweepings, and says that the bottom of the pile was ice, and that the whole of the mass was due to accretions from several storms, that the sun had melted more or less, and then again became impacted by freezing. He further said that the pile would not, in his judgment, impede travel, and were it there today (meaning the day on which he testified) he would not remove it. It throws some light on his testimony in this regard to consider the fact that the pile was removed on his orders the next day. . . . You are, however, gentlemen, entitled to consider the fact that it was removed the next day, and on his orders, when he said he would not, on the day of the trial, remove it, had it been there, as affecting his judgment and his credibility, and his freedom from bias."

The defendant claims that from this statement the jury would consider that the removal of the obstruction by the superintendent of streets the day after the accident was an admission of its dangerous character. This objection is not well taken, for the court strictly limited that fact to its effect in discrediting the testimony of the superintendent, and no question is made that this evidence was not properly before the jury.

The court charged as follows: "In rendering your verdict the jury will answer the following questions:

(1) Was the pile or mass of substance with which the plaintiff's car collided composed predominantly of ice and frozen snow colored by dirt or mud, and assuming its form and color for that reason? (2) Was said pile or mass predominantly composed of sand or mud held in mass by freezing of water contained in its composition? If, upon this question of the composition of this pile, you find in favor of the defendant, you will answer the first question 'Yes,' and the second question, 'No.' If, on the other hand, you find for the plaintiff you will answer the first question 'No,' and the second question 'Yes.'"

The defendant claims that the instruction as to answering these questions directed the jury to answer the questions in accord with the verdict they might render, instead of in accord with the facts as to the composition of the pile as found by the jury.

We are satisfied that the jury would have understood from the charge that they were to answer the questions in accord with their finding whether the composition of the pile was as claimed by the plaintiff or whether its composition was as claimed by the defendant.

The method used by the court in presenting the interrogatories was unfortunate. It is the correct practice to require interrogatories which the court submits to the jury to be answered directly. *Longstean* v. *McCaffrey's Sons*, 95 Conn. 486, 111 Atl. 788.

As to the ninth, tenth, and eleventh assignments of error, the court in its charge correctly and adequately covered the matter to which the requests of the defendant related.

The defendant's thirteenth assignment of error is that the court erred in denying the request of the defendant for the submission of interrogatories to the jury. This matter was within the discretion of

the court. "It is within the reasonable discretion of
the presiding judge to require or to refuse to require
the jury to answer pertinent interrogatories, as the
proper administration of justice may require." *Freed-
man* v. *New York, N. H. & H. R. Co.*, 81 Conn. 601, 612,
71 Atl. 901; *Kornblau* v. *McDermant*, 90 Conn. 624, 98
Atl. 587.

As to the remaining assignments of error, relating to
the charge, requests to charge, or the conduct of the
trial judge, they are so obviously not well taken or
so immaterial as not to justify discussion.

The defendant further claims that the trial court
erred in not granting its motion to set aside the verdict
or grant a new trial because the verdict was excessive.

The following facts are claimed to have been proven
by the plaintiff: In February, 1918, the plaintiff was
sixty-three years of age and a man of unusual vigor
and activity; he is married, and requires the net in-
come of $2,000, which sum he was then earning, for
the reasonable support of his family. As a result of
his injuries the plaintiff suffered a severe scalp wound
and many bruises and contusions upon his body,
and also a fracture of the pelvis in the region of the
ascetabulum. As a result of said fracture of the
pelvis, the left leg of the plaintiff was shortened at the
hip, and he has so far suffered from loss of motion in
the left leg that he has been and still is unable to move
about without the aid of a cane and crutch, and is un-
able to drive an automobile. The plaintiff is, and
for a great many years has been, a physician in good
standing residing in the town of Norwalk and practising
his profession in said Norwalk and vicinity. By reason
of his profession of medicine, the plaintiff had, prior
to said injuries, received a net income of about $2,000
per year. The plaintiff, as a result of the injuries
suffered as aforesaid, was unable to practice his pro-

fession until about the month of May following the injuries, when he was able to attend to a few office calls, and since that time, because of his inability to get about, the plaintiff's practice has been limited to office calls. Because of said injuries and the subsequent inability to attend to the practice of his profession, his practice has been greatly diminished, and since said injuries his income from his practice has not exceeded $500 in any twelve months. The plaintiff's injuries and disabilities are permanent, and his ability to pursue the practice of medicine and to keep and maintain the patronage of his patients has been greatly and permanently impaired, and there is no other labor or calling in which the plaintiff will be able to earn a livelihood. The injuries suffered by the plaintiff as aforesaid were exceedingly painful, and both the injuries and the treatment for the same caused the plaintiff to suffer great mental and bodily pain and anguish.

The plaintiff's expectation of life at sixty-three years of age was about 12.81 years.

The sum of $13,000 at six per cent would procure the plaintiff an annuity of about $1,500 for twelve and a half years. Taking into consideration compensation for pain and suffering and discomfort during his life, we do not find that the verdict is so excessive as to indicate that the jury were controlled by passion, prejudice, partiality or corruption.

There is no error.

In this opinion the other judges concurred.